IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| GLORIA STURDIVANT, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:21-00017-N |
| | ) | |
| KILOLO KIJAKAZI, *Acting* | ) | |
| *Commissioner of Social Security*, | ) | |
|     Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Gloria Sturdivant brought this action under 42 U.S.C. § 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*.[1] Upon due consideration of the parties' briefs (Docs. 14, 15, 16) and those portions of the certified transcript of the administrative record (Doc. 13) relevant to the issues raised, the Court finds that the Commissioner's final decision is due to be **AFFIRMED**.[2]

---

[1] "Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) (citing 42 U.S.C. § 1382(a) (1982 ed., Supp. III)).

[2]     With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 18, 20).
    With the Court's consent, the parties jointly waived the opportunity to present oral argument after briefing closed. (*See* Docs. 19, 21).

## I.    *Procedural Background*

Sturdivant filed the subject SSI application with the Social Security Administration ("SSA") on June 18, 2019. After it was initially denied, Sturdivant requested, and on December 12, 2019, received, a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Hearings Operations. On August 6, 2020, the ALJ issued an unfavorable decision on Sturdivant's application, finding her not entitled to benefits. (*See* Doc. 13, PageID.58-73).

The Commissioner's decision on Sturdivant's application became final when the Appeals Council for the SSA's Office of Appellate Operations denied her request for review of the ALJ's unfavorable decision on December 9, 2020. (*Id.*, PageID.49-53). Sturdivant subsequently brought this action under § 1383(c)(3) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of

section 405(g), a denial of review by the Appeals Council.").

## II.   *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation omitted).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South, LLC* v. *Roswell*, 574 U.S. [293], [301], 135 S. Ct. 808, 815, 190 L. Ed. 2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is "more than a mere scintilla." *Ibid.*; see, *e.g.*, [*Richardson v.*] *Perales*, 402 U.S. [389,] 401, 91 S. Ct. 1420[, 28 L. Ed. 2d 842 (1971)] (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

In reviewing the Commissioner's factual findings, a court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates

against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[3]

---

[3] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[4]

---

ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

[4] However, the "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S. Ct. 1696, 173 L. Ed. 2d 532 (2009). *See also Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. Unit A Sept. 8, 1981) (per curiam) ("It is the claimant who bears the weighty burden of establishing the existence of a disability within the meaning of the Act, and therefore the appellant has the burden of showing that the Secretary's decision is not supported by substantial evidence in the record." (citation omitted)); *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) (unpublished) ("Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion."). "[D]istrict court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social

---

Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue')."); *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per curiam) (unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility … However, Figuera did not adequately raise this issue in her brief before the district court. She raised the issue only summarily, without any citations to the record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority'). As a result, we do not address the sufficiency of the ALJ's credibility finding."); *Turner v. Social Security Administration, Commissioner*, No. 21-13590, 2022 WL 842188, at *2 (11th Cir. Mar. 22, 2022) (per curiam) (unpublished) ("An appellant forfeits an argument by 'mak[ing] only passing references to it or rais[ing] it in a perfunctory manner without supporting arguments and authority.' *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). In her briefing, Turner states that the Appeals Council failed to request her records or obtain a consultative evaluation. But she cites no authorities or makes any other argument tending to

The "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v.*

---

establish that it had a duty to do so. She has therefore failed to adequately develop this argument, and it is forfeited."); *Grant v. Soc. Sec. Admin., Comm'r*, No. 21-12927, 2022 WL 3867559, at *2 (11th Cir. Aug. 30, 2022) (per curiam) (unpublished) (appellant forfeited most challenges where "brief consist[ed] largely of block quotations with only passing or conclusory references to how the law and the relevant facts relate").

*Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). Moreover, an ALJ's decision must "state with at least some measure of clarity the grounds for [the] decision." *Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. A court cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as "[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Rather, "an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974) (quotation omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 921 (11th Cir. 2019) (per curiam) (unpublished)[5] ("Agency actions … must be upheld on

---

[5] In this circuit, "[u]npublished opinions are not considered binding precedent, but

the same bases articulated in the agency's order." (citing *Texaco Inc.,* 417 U.S. at 397, and *Newton*, 209 F.3d at 455)).

Relevant here, eligibility for SSI requires a showing that the claimant is "disabled," 42 U.S.C. § 1382(a)(1)-(2), meaning that the claimant is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[6]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In

---

they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[6] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must

scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

If a court determines that the Commissioner reached a decision "by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such circumstances [the court] cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Nevertheless, " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' " *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation and brackets omitted)).

When the ALJ denies benefits and the Appeals Council denies review of that decision, a court "review[s] the ALJ's decision as the Commissioner's final decision[,]" *Doughty*, 245 F.3d at 1278, and the Court "will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court

must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.

### III.   *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Sturdivant, who alleged disability beginning December 31, 2018, had not engaged in substantial gainful activity since the application date of June 18, 2019.[7] (Doc. 13, PageID.61, 63). At Step Two,[8] the ALJ determined that Sturdivant had the following severe impairments: degenerative disc disease of the lumbar spine, chronic pain syndrome, diabetes mellitus, and obesity. (Doc. 13, PageID.63-64). At Step Three,[9] the ALJ found that Sturdivant did

---

[7] "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file." *Moore*, 405 F.3d at 1211.

[8] "The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. *See also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (per curiam) (Step Two "is a 'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected.' " (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). "[A]n 'impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.' A claimant's burden to establish a severe impairment at step two is only 'mild.' " *Schink*, 935 F.3d at 1265 (citation omitted) (quoting *McDaniel*, 800 F.2d at 1031).

[9] Step Three "identif[ies] those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Yuckert*, 482 U.S. at 153. *See also Sullivan v. Zebley*, 493 U.S. 521, 525, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) ("In the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work … If the claimant's impairment matches or is 'equal' to one of the listed impairments, he qualifies for benefits without further inquiry."); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997) ("If the claimant's condition meets or equals the level of severity of a listed impairment, the

not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (Doc. 13, PageID.64-65).

At Step Four, [10] the ALJ determined that Sturdivant had the residual

---

claimant at this point is conclusively presumed to be disabled based on his or her medical condition.").

[10] At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted). "[A]n ALJ's RFC assessment is an administrative finding based on all the relevant evidence, including both medical and nonmedical evidence." *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1065 (11th Cir. 2021).

functional capacity (RFC) "to perform medium work as defined in 20 CFR 416.967(c)[11] except [she] can frequently balance, stoop, kneel, crouch, crawl and climb ramps and stairs, but she can never climb ladders, ropes or scaffolds[, and] must avoid all exposure to hazards." (Doc. 13, PageID.65-68). Based on the RFC and the testimony of a vocational expert,[12] the ALJ found that Sturdivant was capable of performing past relevant work as a companion. (Doc. 13, PageID.68-69).

However, as an alternative finding, the ALJ proceeded to Step Five and, after considering additional testimony from the vocational expert, found that there also exist a significant number of other jobs in the national economy as a hand packer (DOT 920.587-018, [13] ~174,000 jobs nationally), sorter/sampler/weigher (DOT

---

[11] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. The criteria for "medium" work are as follows:

> Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, [the Commissioner] determine[s] that he or she can also do sedentary and light work.

20 C.F.R. § 416.967(c).

[12] "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

[13]

> [T]he SSA "rel[ies] primarily on the DOT [Dictionary of Occupational Titles] … for information about the requirements of work in the national

369.687-026, ~39,000 jobs nationally), and hand packer/packager (DOT 920.687-094, ~50,000 jobs nationally) that Sturdivant could perform given her RFC, age, education, and work experience. (*Id.*, PageID.69-70). Thus, the ALJ found that Sturdivant was not "disabled" under the Social Security Act.  (*Id.*, PageID.70).

## IV.  *Analysis*

Sturdivant argues that the ALJ reversibly erred in finding the medical opinion of her treating physician, Glenton W. Davis, M.D., not persuasive.[14] No reversible error has been shown.

Medical opinions are one category of evidence the Commissioner considers in making disability determinations. *See* 20 C.F.R. § 416.913(a). The regulations define "medical opinion" as "a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s) and whether [he or she] ha[s] one or more impairment-related limitations or restrictions in the following abilities: … (i) [the] ability to perform physical demands of work activities, such as sitting, standing,

---

economy." SSR 00-4p, 2000 WL 1898704, at *2. [Title] 20 C.F.R. § 416.966(d) explicitly names the DOT as one of the main sources of jobs data the SSA relies on, and provides that ALJs "will take administrative notice of reliable job information available" in the DOT. This subsection places the DOT first in its list of reliable government sources. *Id.* … [O]ther SSA Rulings describe the DOT as "authoritative." See, e.g., SSR 96-9p.

*Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364–65 (11th Cir. 2018).

[14] Sturdivant also argues that "[t]he evidence does not support th[e] RFC" (Doc. 15, PageID.516), but that argument hinges entirely on the proposition that the ALJ should have found Dr. Davis's opinion persuasive and adopted the limitations he assigned.

walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) [the] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) [the] ability to perform other demands of work, such as seeing, hearing, or using other senses; and (iv) [the] ability to adapt to environmental conditions, such as temperature extremes or fumes." *Id.* § 416.913(a)(2). The Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) … , including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a). "When a medical source provides one or more medical opinions … , [the Commissioner] will consider those medical opinions … from that medical source together using [the following] factors[,]" *id.*: supportability, consistency, relationship with the claimant, specialization, and "other factors." *Id.* § 416.920c(c).

"The most important factors … are supportability … and consistency…" *Id.* § 416.920c(a); *accord id.* § 416.920c(b)(2). "Supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) … , the more persuasive the medical opinion(s) … will be." 20 C.F.R. § 416.920c(c)(1). "Consistency" means that "[t]he more consistent a medical opinion(s) … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the

medical opinion(s) … will be." *Id.* § 416.920c(c)(2). The Commissioner "will explain how [the Commissioner] considered the supportability and consistency factors for a medical source's medical opinions … in [the] determination or decision." *Id.* § 416.920c(b)(2). On the other hand, the Commissioner "may, but [is] not required to, explain how [the Commissioner] considered the [other] factors … when … articulat[ing] how [the Commissioner] consider[ed] medical opinions … in [the] case record[,]" *id.*, unless the Commissioner "find[s] that two or more medical opinions … about the same issue are both equally well-supported … and consistent with the record … but are not exactly the same…" *Id.* § 416.920c(b)(3).[15]

The ALJ addressed Dr. Davis's opinion as follows:

> Dr. Davis, the claimant's treating physician, opined that the claimant would be capable of siting [sic] for one hour in an eight-hour workday and standing/walking for one hour in an eight-hour workday. He opined that she could lift ten pounds occasionally and five pounds frequently and should avoid dust, fumes, gases, extreme temperatures and other environmental pollutants. The doctor opined the claimant could frequently reach and manipulate objects, she could occasionally bend or stoop, rarely push or pull, and never balance, reach, climb stairs or ladders or work around hazardous machinery. He opined the claimant would miss work more than three times a month, would be off task more than twenty-five percent of the day and would require unscheduled breaks (Exhibit 14F/1,2). The undersigned does not find this opinion persuasive, as it is not supported by a detailed explanation, nor is it even consistent with this doctor's own treatment records. This doctor's own records note very few significant symptoms or complaints, the objective

---

[15] Sturdivant's brief cites prior Eleventh Circuit precedent indicating that the medical opinions of treating physicians are generally due special consideration. However, the Commissioner has promulgated new regulations that abrogated the "treating physician" rule for applications, such as the subject ones, filed on or after March 27, 2017, and the Eleventh Circuit has upheld the validity of these regulations. *See Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 894-98 (11th Cir. 2022).

testing is consistently normal, and she is only treating conservatively with routine follow-ups and medication.

(Doc. 13, PageID.68).

Dr. Davis's opinion was completed on "Medical Source Statement" and "Clinical Assessment of Pain" forms consisting mostly of check the box/circle the answer responses, and he conspicuously left blank the space asking him to "[s]tate the medical basis for these restrictions." (*Id.*, PageID.502-503). Thus, the ALJ correctly observed that Dr. Davis's opinion was "not supported by a detailed explanation." And review of Dr. Davis's treatment records confirms the ALJ's view that they "note very few significant symptoms or complaints." Indeed, the few treatment notes from Dr. Davis post-dating Sturdivant's SSI application date of June 18, 2019—the date from which Sturdivant must show disability—document such mild findings as stable vital signs and extremities, clear lungs, "CV normal," and "TMs normal." (*Id.*, PageID.470, 476-478, 480-481, 496). Thus, the ALJ correctly determined that Dr. Davis's opinion lacked "supportability."

Sturdivant claims that "Dr. Davis' assessment is supported by his own treatment records[ because he] has treated Ms. Sturdivant since 2009 for hypertension, lumbar disc disease, obesity, osteoarthritis, neck pain, diabetes mellitus, and chronic pain syndrome[, and] has referred her for pain management and for endocrinology." (Doc. 15, PageID.516). She further points out that she "has been treated at Jackson Clinic Endocrinology during 2019 and 2020 with uncontrolled diabetes mellitus." (*Id.*). None of that, however, compels a finding that Dr. Davis's opinion is credible. While a physician's relationship with the claimant—considering

such issues as the length and extent of the treatment relationship—is a relevant factor in determining what persuasive value to give a medical opinion, *see* 20 C.F.R. § 416.920c(c)(3), the opinion's "supportability" and "consistency" are still the most important factors in that regard. *See id.* §§ 416.920c(a), (b)(2). To the extent Sturdivant asserts that Dr. Davis's opinion was to be believed simply because she has various impairments, "the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard." *Moore*, 405 F.3d at 1213 n.6. *Accord, e.g.*, *Proenza v. Comm'r of Soc. Sec.*, No. 20-14237, 2021 WL 3073777, at *3 (11th Cir. July 21, 2021) (per curiam) (unpublished) ("The mere existence of an impairment does not reveal the extent to which it limits a claimant's ability to work. Nor does it undermine the ALJ's determination that she can work." (citing *Moore*, 405 F.3d at 1213 n.6)). And the fact that Sturdivant was receiving treatment for her impairments does not necessarily lend support to Dr. Davis's extreme opinion. On the contrary, a "medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) (quotation omitted).[16]

Citing portions of the record that purportedly show elevated blood glucose and hemoglobin levels, Sturdivant also claims: "Clearly, the ALJ's assertion that the

---

[16] Sturdivant also points out that "[t]he consultative examiner in 2017 recommended disability for Ms. Sturdivant due to her excessive back pain and limitation of function." (Doc. 15, PageID.516). However, statements that a claimant is disabled are "inherently neither valuable nor persuasive" in the disability adjudication process. 20 C.F.R. § 416.920b(c).

objective testing was consistently normal is inaccurate and unsupported by the evidence of record." (*See* Doc. 15, PageID.514). First, in claiming that these measurements are medically signification, Sturdivant asks the Court to rely on two articles from non-governmental websites (SingleCare and WebMD) purporting to state what constitute normal blood glucose and glycated hemoglobin levels. Sturdivant has provided no authority or guidance from the SSA as to how an ALJ is to consider diabetes in the disability adjudication process, nor has she attempted to explain why the Court should uncritically accept the assertions made in either of the online articles she does cite. At best, then, this appears to be an attempt to have the Court impermissibly reweigh the evidence or substitute its own judgment for the ALJ's on this issue.

More importantly, Sturdivant has pointed to nothing in the record (apart from Dr. Davis's opinion, of course) suggesting that the elevated blood glucose and hemoglobin levels impacted her ability to work to the disabling degree reflected in Dr. Davis's opinion. Per the ALJ's decision, the record reflects two visits to the emergency room—one in January 2019 (approximately five months before Sturdivant's SSI application date), and another in April 2020. (*See* Doc. 13, PageID.66). Apart from elevated blood sugar levels, as well as reported urinary frequency at the latter, both emergency room visits documented unremarkable findings, and each time Sturdivant was discharged in good/stable condition with instructions to continue self-care, including taking medications as prescribed, drinking plenty of water, watching diet, and following up with her regular doctors.

(*See id.*, PageID.303, 488).

After the first emergency room visit, in February 2019 Sturdivant began seeing an endocrinologist, to whom she reported taking medications but not following a diabetic diet. The endocrinologist adjusted her medications, and told her to join a formal weight loss program and follow a low fat/carb diet. Further visits with the endocrinologist prior to the second emergency room visit did not document any restrictive abnormalities. The record shows one follow-up with the endocrinologist two months after the second emergency room visit, "where objective testing remained normal and her medications were adjusted…" (*See id.*, PageID.66).[17] In sum, the ALJ cited substantial evidence showing that Dr. Davis's opinion lacked "consistency" with the record as a whole, and Sturdivant has failed to persuade the undersigned otherwise.[18]

_____

[17] Sturdivant disputes that "objective testing" occurred at this last visit, since the treatment notes indicate it was a telehealth session. Semantics aside, Sturdivant fails to dispute the overall characterization of that visit as "normal."

[18]    Sturdivant also argues that Dr. Davis's opinion is supported by her own subjective reports regarding the limiting effects of her impairments. However, the ALJ found that Sturdivant's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e ALJ's] decision." (Doc. 13, PageID.66). Sturdivant does not substantively address the ALJ's credibility finding, and the undersigned finds that the credibility finding is supported by substantial evidence for largely the same reasons that the ALJ's decision to reject Dr. Davis's opinion is. *See Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (per curiam) ("A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court.").

Finally, Sturdivant argues, in general terms, that the ALJ "failed to link the evidence to the RFC determination by describing how the evidence supports each conclusion." (Doc. 15, PageID.517). The district court opinions Sturdivant cites in support of this argument are not clear on what this purported "linkage" requirement entails; to the extent it requires the ALJ to do more than "state with at least some

No reversible error having been shown, the Court finds that the Commissioner's final decision denying Sturdivant's application for benefits is due to be **AFFIRMED**.

### V.   *Conclusion & Order*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Sturdivant's June 18, 2019 SSI application is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately hereafter in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 30th day of September 2022.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

measure of clarity the grounds for his decision[,]" *Owens*, 748 F.2d at 1516, the undersigned does not find those cases persuasive. *See, e.g.*, *Fox v. Acadia State Bank*, 937 F.2d 1566, 1570 (11th Cir. 1991) (per curiam) ("A district court is not bound by another district court's decision, or even an opinion by another judge of the same district court…"). Moreover, the ALJ's RFC is supported by the medical opinion of a state agency medical consultant, which the ALJ found "persuasive" as supported by and consistent with the record evidence. (Doc.13, PageID.68). Sturdivant fails to explain why this does not sufficiently show how the evidence supports the ALJ's RFC.